1  **WO**

6  # IN THE UNITED STATES DISTRICT COURT

7  # FOR THE DISTRICT OF ARIZONA

9  Jonathan Garcia,                              No. CV-18-00091-PHX-DGC

10            Plaintiff,                          **ORDER**

11  v.

12  Commissioner of Social Security
    Administration,

13

14            Defendant.

Plaintiff Jonathan Garcia seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the administrative law judge's ("ALJ") opinion contains reversible error, the Court will remand for further proceedings.

**I.    Background.**

Plaintiff is a 55 year old male who previously worked as an account manager, financial counselor, food preparer, lab technician, material handler, singer, and polisher. A.R. 129, 176. Plaintiff applied for disability insurance benefits on September 20, 2013, alleging disability beginning on February 19, 2013. A.R. 129-31. On May 3, 2016, Plaintiff appeared and testified at a hearing before an ALJ. A.R. 30-41. On August 25, 2016, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 13-23. This became the Commissioner's final

decision when the Appeals Council denied Plaintiff's request for review on November 14, 2017. A.R. 1-3.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at

step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) he is not currently working, (2) he has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") prevents his performance of any past relevant work. If the claimant meets his burden through step three, the Commissioner must find him disabled. If the inquiry proceeds to step four and the claimant shows that he is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018, and had not engaged in substantial gainful activity since February 19, 2013. A.R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus II, peripheral neuropathy, ischemic heart disease, and bilateral carpal tunnel. *Id.* The ALJ also noted the following medically determinable but non-severe impairments: essential hypertension, obesity, depression, and anxiety. A.R. 16-17. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 17. At step four, the ALJ found that Plaintiff had the RFC to perform light work with some additional limitations, and Plaintiff was unable to perform his past relevant work. A.R. 17-21. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, he could perform a significant numbers of jobs in the national economy. A.R. 22.

## IV. Analysis.

Plaintiff argues that the ALJ erred by discrediting his symptom testimony and the opinion of his treating orthopedist, Dr. Humberto Galleno. Doc. 11.

### A. Dr. Galleno.

Dr. Galleno saw Plaintiff multiple times in 2013 to evaluate and treat pain in his right hand and wrist. A.R. 409-36; 548-75. In May 2013, Dr. Galleno diagnosed

Plaintiff with bilateral carpal tunnel syndrome that was greater on the right side and limited Plaintiff to lifting no more than five pounds and no repetitive grasping, gripping, or torsional movements of his right hand or wrist. A.R. 413. In September 2013, Dr. Galleno issued a final report opining that Plaintiff had "achieved maximal medical improvement" and was limited to lifting ten pounds with his right hand and no repetitive grasping, gripping, or torsional movements of his right hand or wrist. A.R. 417.

The ALJ's decision does not mention Dr. Galleno by name, but briefly mentions his opinion, stating: "On September 12, 2013, the record shows the claimant was precluded from lifting, pushing, carrying with the right hand over 10 pounds with no repetitive grasping and gripping, no repetitive torsional movements of the right hand and no use of laboratory instruments." A.R. 19. This sentence appears in a paragraph where the ALJ summarizes various medical records and findings regarding Plaintiff's carpal tunnel syndrome. *Id.* The ALJ provides no explanation as to why Dr. Galleno's limitations were not included in Plaintiff's RFC.

Defendant does not dispute that Dr. Galleno is a treating physician, but argues that any error in failing to address Dr. Galleno's opinions is harmless because the ALJ "credited the reliable later opinion of examining physician Afra Sohail, M.D.," who found that Plaintiff had no restrictions in the use of his hands. Doc. 12 at 4; *see* A.R. 469-74. The Court does not agree.

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Thus, an ALJ's crediting of another physician's opinion that supports the RFC does not discharge the ALJ's obligation to provide reasons for rejecting a treating physician's opinion. *See id.*; *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) ("We hold that the ALJ erred because he neither explicitly rejected the opinion of [the examining physician], nor set forth specific, legitimate reasons for crediting [the non-examining physician] over [the examining physician].")). The ALJ failed to indicate how much weight he assigned to Dr. Galleno's

medical opinions or give any reason for rejecting his functional limitations. This was clear error.

The Court cannot find the error harmless. The ALJ's ultimate nondisability determination is based on an RFC that assumes Plaintiff can frequently finger with both hands and lift 20 pounds occasionally and 10 pounds frequently. This is inconsistent with the limitations Dr. Galleno assessed. The ALJ's failure to weigh Dr. Galleno's opinion therefore may have affected the ultimate nondisability determination.

### B. Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptoms he has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Plaintiff testified that he could not work due to problems with his right hand and weakness and fatigue as a result of his heart attack. A.R. 37. He testified that he had limited grasping and gripping strength in his right hand; his lifting strength varied but sometimes he could not lift a mug[1]; he got fatigued easily but could walk about two blocks; and he had pain in his right knee. A.R. 37-39. He testified that he lived alone

---

[1] The transcript shows that Plaintiff used an item at the hearing to demonstrate his lifting abilities. *See* A.R. 38. Plaintiff referred to the item as a "picture," but his representative described it as a "mug," as did the ALJ in his decision. *Id.*; A.R. 20. Plaintiff also stated: "If this picture was half way full, it would be difficult [to consistently] work in that manner." A.R. 38. It seems most likely that Plaintiff actually said "pitcher," but in any event the context makes clear that it was a small, light item.

and was able to drive, work part time, wash dishes, do some cooking, and go on the internet. A.R. 40. In a function report completed two years before the hearing, he stated that he could stand or walk for 15 to 20 minutes before needing to rest; he had difficulty sleeping; he had to use a support bar to maintain balance in the shower; he could drive, shop for personal items two or three times per week, and attend church once per week; and he lived with family and was able to prepare simple meals and help with chores such as feeding the dogs, laundry, and dishes. A.R. 256-64.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record[.]" A.R. 18. The ALJ reasoned that Plaintiff's testimony was inconsistent with (1) the medical evidence and (2) Plaintiff's daily activities, and (3) that Plaintiff made "inconsistent statements . . . throughout the disability process." A.R. 19-20. The ALJ did not find that Plaintiff was malingering.

### 1. Medical Evidence.

After stating that Plaintiff's testimony was not supported by the medical evidence, the ALJ summarized various medical records. For example, the decision cites records showing that Plaintiff's diabetes was "without complications" and under control. A.R. 18-19 (citing A.R. 68, 732). One of these records also notes that Plaintiff had "uncontrolled" diabetes. *See* A.R. 733-34. But even assuming the evidence shows that Plaintiff's diabetes was controlled, it does not appear that this would be inconsistent with Plaintiff's testimony because he did not testify to complications resulting from diabetes.

The ALJ also summarized records regarding Plaintiff's heart disease, including records of a quadruple bypass surgery; a chest x-ray showing normal vascularity, clear lung fields, and normal cardiac silhouette (A.R. 487); an echocardiogram showing normal left-sided chamber sizes, mildly diminished left ventricular systolic function, mild wall motion abnormality, pseudo-normal filling pattern, and mild mitral and tricuspid

regurgitation (A.R. 498-99); a record indicating Plaintiff stopped taking his prescription Plavix and switched to aspirin (A.R. 517); a record noting that Plaintiff suffered from "generalized fatigue and malaise" and chest pain, but most symptoms were "more suggestive of atypical/noncardiac etiology" (A.R. 578); and a record noting that he "achieved greater than 89% of the prescribed maximal target heart rate" on treadmill nuclear stress testing. A.R. 19. The ALJ did not explain the significance of these findings or why they would conflict with Plaintiff's testimony that he suffered from weakness in his legs and general fatigue as a result of this impairment.

With respect to Plaintiff's carpal tunnel condition, the ALJ summarized records of a nerve conduction study revealing bilateral carpal tunnel syndrome and an "uncertain" clinical prognosis (A.R. 567-68); an MRI showing a subchondral cyst in Plaintiff's fifth metacarpal head (A.R. 295); and an indication that Plaintiff responded well to a cortisone injection (A.R. 416-17). A.R. 19. The ALJ also noted that Plaintiff denied many symptoms at a 2014 appointment, including dry eyes, shortness of breath, arm pain, abdominal pain, fever, weight gain or loss, and exercise intolerance. *Id.* (citing A.R. 518, 520). The ALJ did not explain why these records or Plaintiff's denial of the noted symptoms undermines his testimony.

Although the decision summarizes medical records that might support the RFC, it includes no analysis as to why the records are inconsistent with Plaintiff's symptom testimony. The Ninth Circuit has held that "providing a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Furthermore, the ALJ had already determined that the symptoms could reasonably be expected to result from Plaintiff's impairments. Thus, Plaintiff was not required to produce medical records confirming the severity of the symptoms. *Garrison*, 759 F.3d at 1014; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996). The Court cannot conclude that this is a

clear and convincing reason to discredit Plaintiff's testimony because the ALJ failed to explain any specific inconsistency between the medical records and Plaintiff's testimony.

## 2. Daily Activities.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the activities contradict the claimed limitations, or the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ found that Plaintiff's daily activity level was "minimally limited" and could not "be reconciled with the considerable severity alleged." A.R. 20. The ALJ noted that in contrast to Plaintiff's allegation that he could not lift a mug, the record showed that Plaintiff was able to make coffee and meals, shower independently, drive with no problems in his hands, do chores, fill food and water bowls for pets, exercise by walking, work part-time, and play guitar. *Id.* (citing A.R. 257, 543-44, 715). Plaintiff argues that all of these activities "can easily be accomplished with his left hand[.]" Doc. 11 at 8. But Plaintiff did not qualify his testimony with such a restriction, and the ALJ's inference that he used both hands was reasonable. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The ALJ identified specific testimony and daily activities that contradict it. This is a clear and convincing reason to discredit Plaintiff's testimony regarding the severity of his symptoms.

///

### 3. Inconsistent Statements.

The ALJ stated that Plaintiff made "inconsistent statements . . . throughout the disability process," but did not elaborate. A.R. 20. The ALJ identified no inconsistencies other than the inconsistency discussed in the preceding section regarding Plaintiff's daily activities. This is not a separate clear and convincing reason because the ALJ provided no explanation. *See Brown-Hunter*, 806 F.3d at 495 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

### 4. Conclusion.

The ALJ's first and third reasons for discrediting Plaintiff's testimony were error. Although the ALJ provided one clear and convincing reason – that specific testimony was inconsistent with Plaintiff's reported daily activities – the ALJ did not focus heavily on this reason. The ALJ primarily rejected Plaintiff's symptom testimony because it was inconsistent with the medical evidence, and briefly noted the other two reasons. The Court cannot find the ALJ's two errors harmless simply because the ALJ provided one legitimate reason.

Nor can the Court conclude that the ALJ's erroneous rejection of Plaintiff's testimony did not affect the ultimate nondisability determination. The ALJ's RFC assumes that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours in an eight-hour workday, frequently balance, stoop, kneel, crouch, and crawl, and frequently finger with both hands. These capabilities are inconsistent with Plaintiff's testimony. The ALJ's error therefore may have affected the ultimate conclusion.

## V. Remedy.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal citations and quotation marks omitted). The Ninth Circuit emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and the opinion of his treating physician, but there is no vocational expert testimony or other discussion of whether Plaintiff could sustain work if his testimony or Dr. Galleno's opinions are credited. These outstanding issues must be resolved before a disability determination can be made. The Court accordingly will remand for further proceedings.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this order. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 10th day of August, 2018.

David G. Campbell
Senior United States District Judge

- 10 -